IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAYMOND BERNARD, both individually     Civil Action No. 2:18-cv-00213
and on behalf of the Estate of MADELINE
BERNARD,

                                              Judge Nora Barry Fischer

        Plaintiff,

v.

RACHELLE TERRY, ERIN O'BRIEN,
and THE HUMAN SERVICES
ADMINISTRATIVE ORGANIZATION,
INCORPORATED,

        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT
PURSUANT TO F.R.C.P. 12(b)(6)**

Defendants, Rachelle Terry, Erin O'Brien, and The Human Services Administrative

Organization, Incorporated (hereinafter referred to as "HSAO"), by and through counsel, Walsh,

Barnes, Collis & Zumpella, P.C., Pamela V. Collis, Esquire and Susan A. Kostkas, Esquire, file

the following  Memorandum of Law in Support of Motion to Dismiss Second Amended

Complaint Pursuant to F.R.C.P. 12(b)(6):

## I.      BACKGROUND

Plaintiff Raymond Bernard, both individually and on behalf of the Estate of Madeline

Bernard, initiated this action on February 16, 2018.  An Amended Complaint followed, and

added HSAO as a Defendant.  Plaintiff filed a Second Amended Complaint on October 17, 2018,

adding some factual and vicarious liability and corporate negligence allegations.

This action arises from events of February 17, 2016.  Plaintiff alleges his sister, Sommer

Bernard, had a history of mental illness, which at times manifested as violent conduct.  ECF 51,

¶9.  Plaintiff describes Ms. S. Bernard's June 2015 criminal history as including violent conduct toward her mother, Decedent Madeline Bernard.  Ms. S. Bernard was arrested in December 2015 for stealing a vehicle.  ECF 51, ¶¶10-13.

Plaintiff alleges that HSAO, pursuant to a contract with and funding by Allegheny County, administered and provided staff for Justice Related Services, a diversionary program. He alleges HSAO reviewed Ms. S. Bernard's case and that she was released from Allegheny County Jail to Justice Related Services' custody on February 8, 2016.  ECF 51, ¶¶15-18. Defendant Rachelle Terry, a Diversion Specialist with HSAO and "metal health worker", was assigned to Ms. S. Bernard's case.  ECF 51, ¶¶19, 55.  Plaintiff alleges that Ms. Terry was informed by Allegheny County Jail officials and Ms. M. Bernard about Ms. S. Bernard's mental illness and prior violent conduct.  ECF 51, ¶¶19-21.

Upon release from jail on February 17, 2016, Plaintiff alleges that Ms. Terry transported Ms. S. Bernard to Ms. M. Bernard's home, where Ms. S. Bernard resided prior to arrest.  ECF 51, ¶¶23-24.  Later that day, Plaintiff alleges Ms. S. Bernard killed Ms. M. Bernard following an argument.  ECF 51, ¶25.

Plaintiff brings a civil action against HSAO, Ms. Terry and Ms. Terry's supervisor, Defendant Erin O'Brien (hereinafter collectively referred to as "the HSAO Defendants"), pursuant to 42 U.S.C. §1983, and wrongful death and survival claims, pursuant to 42 Pa.C.S. § 8301 and § 8302, based upon negligence, vicarious liability and corporate negligence theories. Additionally, a demand for punitive damages is directed to HSAO and Ms. Terry.

## II.   ISSUES

A. **WHETHER SECTION 1983 CLAIMS SHOULD BE DISMISSED DUE TO ABSENCE OF STATE ACTION AND INABILITY TO SATISFY THE REQUIRED ELEMENTS?**

  **SUGGESTED ANSWER: YES.**

B. **WHETHER THE NEGLIGENCE CLAIM FAILS TO SATISFY THE TWOMBLY/IQBAL PLEADING REQUIREMENTS?**

  **SUGGESTED ANSWER: YES.**

C. **WHETHER THE HSAO DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY?**

  **SUGGESTED ANSWER: YES**

D. **WHETHER THE PUNITIVE DAMAGES DEMAND SHOULD BE DISMISSED?**

  **SUGGESTED ANSWER: YES.**

## III.   STANDARD OF REVIEW

With a Federal Rule of Civil Procedure 12(b)(6) motion, a court must primarily consider the allegations contained in the complaint. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990) (citation omitted). A court must accept as true all of the allegations in the pleadings and must give the plaintiff the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991). However, more than "a formulaic recitation of the elements of a cause of action" is required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, a court does not need to consider bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997). A plaintiff is required to provide fair notice to defendants and to assert more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." "Threadbare

3

recitals… supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Twombly*, 550 U.S. at 555.

## IV.   **ARGUMENT**

Plaintiff alleges in his First, Second and Third Causes of Action that the HSAO Defendants are liable under 42 U.S.C. § 1983. He asserts a violation of Ms. M. Bernard's rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. As noted by the United States Court of Appeals for the Third Circuit in *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006):

> Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights. *Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979). To state a § 1983 claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

As above described, Plaintiff alleges that Ms. M. Bernard's constitutional right under the Due Process Clause was violated when Ms. Terry drove or transported Ms. S. Bernard, who suffered from mental illness, from jail to Ms. M. Bernard's home, the home at which Ms. S. Bernard resided prior to being arrested and placed in jail for stealing a vehicle.

As noted by the Third Circuit in *Morse v. Lower Merion School District*, 132 F.3d 902, 907 (3d Cir. 1997) (citations omitted), "[a]lthough the general rule is that the state has no affirmative obligation to protect its citizens from the violent acts of private individuals, courts have recognized two exceptions to this rule. The first of these is commonly known as the "special relationship" exception…. The second exception is the "state-created danger" theory of liability." Here, Plaintiff relies upon the state-created danger theory. However, even accepting the allegations of the Second Amended Complaint as true, which the HSAO Defendants are

constrained to do for this Motion to Dismiss, Plaintiff cannot prevail on the Section 1983 and

other causes of action for multiple reasons, including absence of state action, absence of a

constitutional violation, and inability to satisfy the elements of a state-created danger theory.

Concerning his wrongful death and survival claims, Plaintiff's Second Amended Complaint fails

to satisfy the heightened *Twombly/Iqbal* standard.   Additionally, the HSAO Defendants are

immune from liability.   Finally, and in the alternative, the demand for punitive damages is

improper both as a matter of law and given the absence of requisite conduct to support such a

demand.

### A.      Absence of State Action

"The color of state law element is a threshold issue; there is no liability under § 1983 for

those not acting under color of law."    *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d

Cir. 1995).  Plaintiff bears the burden of proving that the actions of the HSAO Defendants may

be fairly treated as the actions of the State itself.  See *West v. Atkins*, 487 U.S. 42, 48 (1988).

Yet, Plaintiff cannot establish a sufficiently close nexus between the HSAO Defendants and the

County regarding the diversion services provided to Ms. S. Bernard to satisfy this burden.

Therefore, the Section 1983 claims against the HSAO Defendants should be dismissed.

In *Gorman*, the Third Circuit undertook a color of state law analysis in a Section 1983

action arising from alleged constitutional violations during an arrest, including an alleged failure

to provide medical treatment.    In affirming summary judgment in favor of defendants

Englishtown-Manalapan First Aid Squad and four of its squad members, the Court noted:

> A private action is not converted into one under color of state law merely
> by some tenuous connection to state action.  The issue is not whether the
> state was involved in some way, but whether the actions taken are fairly
> attributed to the state itself. *Jackson v. Metropolitan Edison Co.*, 419 U.S.
> 345, 351 (1974). As the Supreme Court has stated: "we ask whether the

State provided a mantle of authority that enhanced the power of the harm-causing individual actor." *NCAA v. Tarkanian*, 488 U.S. 179, 192 (1988).

*Id.* at 638-39.  The Supreme Court has outlined several tests to determine the presence of state action: the exclusive government function approach, the joint participation or symbiotic relationship approach, and the nexus approach.  *Id.*  Here, Plaintiff asserts at Paragraph 31 of the Second Amended Complaint, ECF 51, that the HSAO Defendants "were performing a function that is the exclusive prerogative of the State.  Specifically, the initiation and maintenance of pre-trial diversionary programs is always the exclusive function of a local government."  Additionally, at Paragraph 32, Plaintiff describes Ms. Terry and Ms. O'Brien as identifying themselves as Allegheny County employees.  Thus, the following focuses on the exclusive government function approach, although the HSAO Defendants assert that Plaintiff is unable to satisfy any of the state action tests espoused by the Supreme Court.

In rejecting the *Gorman* plaintiffs' assertion that the first aid squad acted under color of state law as it performed an exclusive government function,  the Third Circuit noted "[t]he Supreme Court has made clear that the scope of exclusive government functions is limited, reaching only those activities that have been 'traditionally the *exclusive* prerogative of the State.'"  *Id.* at 639-40 (italics in the original), quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982).  Relying upon *Rendell-Baker* in applying the exclusive government function test, the Court noted that "receipt of public funds and the performance of a function serving the public alone are not enough to make a private entity a state actor."   *Gorman*, 47 F.3d at 642.  Thereafter, the Court examined plaintiffs' allegations as to the other tests and determined that there was no "connection sufficient to demonstrate that the first aid squad was acting under color of state law."  *Id.*

The Supreme Court reached a similar conclusion in *Rendell-Baker* when affirming a decision to grant a school's motion to dismiss based upon an absence of state action in Section 1983 claims arising from the school's discharge of five teachers. The school taught maladjusted youth referred to it by the State. The school was funded through state and federal agencies, and was subject to state regulations. The Court examined the allegations under all four tests in concluding the absence of state action, noting that "the school's receipt of public funds does not make the discharge decisions acts of the State." *Rendell-Baker*, 457 at 840. Similarly, "the school's fiscal relationship with the State is not different from that of many contractors performing services for the government." *Id.* at 843. In analyzing the exclusive government function test, the Supreme Court remarked:

> [O]ur holdings have made clear that the relevant question is not simply whether a private group is serving a "public function." We have held that the question is whether the function performed has been "traditionally the *exclusive* prerogative of the State." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974); quoted in *Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982). There can be no doubt that the education of maladjusted high school students is a public function, but that is only the beginning of the inquiry. Chapter 766 of the Massachusetts Acts of 1972, demonstrates that the State intends to provide services for such students at public expense. That legislative policy choice in no way makes these services the exclusive province of the State.... That a private entity performs a function which serves the public does not make its acts state action.

*Rendell-Baker*, 457 at 842 (emphasis in the original).

Plaintiff alleges that Allegheny County contracted with HSAO to provide staffing for Justice Related Services, which is a diversionary program designed to facilitate referral of criminal offenders to mental health treatment and other services in collaboration with the Court of Common Pleas of Allegheny County and others. The intent is to remedy the behavior leading to the arrest and avoid a criminal conviction. The Second Amended Complaint acknowledges that Justice Related Services collaborated with at least the Court of Common Pleas of Allegheny

County, Ms. S. Bernard and Ms. M. Bernard to arrive at the court-approved plan to achieve the County's goal of diversion of criminal conviction. He further asserts that HSAO and its employees, Ms. Terry and Ms. O'Brien, were "administering" and "performing a function that is the *exclusive prerogative* of the State." Additionally, he asserts "the initiation and maintenance of pre-trial diversionary programs is always the exclusive function of a local government" and therefore the HSAO Defendants are state actors. ECF 51,¶¶ 15-17 and 31 (italics added).

However, Plaintiff has not alleged facts supporting this formulaic recitation of the elements of a Section 1983 claim. The few facts set forth in the Second Amended Complaint underscore the absence of a close nexus between the County and the HSAO Defendants necessary to show that the HSAO Defendants are state actors. Pursuant to his allegations, at least Justice Related Services, the state court, Ms. S. Bernard and Ms. M. Bernard were involved in arriving at the court-ordered diversion plan. Additionally, the absence of a close nexus is buttressed by Plaintiff's voluntary dismissal of the County as a party in this action. If the County is not a joint participant with HSAO, then HSAO cannot be a joint participant with the County. See *Thorn v. County of Monroe*, 586 F.Supp. 1085, 1092 (M.D. Pa. 1984), affirmed, 745 F.2d 48 (3d Cir. 1984).

Further, it is a [person]'s function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributable to the State." *West*, 487 U.S. 42, 55-56. In *West*, the Supreme Court determined that a private physician under contract with the state to provide services to prisoners acts under color of state law. The Court found that the physician provided services traditionally within the exclusive prerogative of the state because a prisoner has no alternative means to acquire medical care aside from those provided by the state. Consistent with *West*, any alleged identification of Ms. Terry and Ms.

O'Brien as Allegheny County employees, via business cards or email addresses, is not the proper focus. Instead, the focus is on the services they provide. While the HSAO Defendants view themselves as social workers, Plaintiff describes Ms. Terry as a mental health worker. Regardless, the services the HSAO Defendants provided are not within the exclusive prerogative of the state. Ms. S. Bernard was not incarcerated and the HSAO Defendants did not deprive her access to mental health services or social services. Likewise, HSAO Defendants did not deny Ms. M. Bernard access to any sources of help, such as calling the police or initiating an involuntary commitment against her daughter. See *Black by Black v. Indiana Area School Dist.*, 985 F.2d 707 (3d Cir. 1993).

As noted by the Third Circuit in *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141-42 (3d Cir. 1995), certiorari denied, 516 U.S. 858 (1995):

> The state action principle is stated succinctly as follows: "[A]t base, 'constitutional standards are invoked only when it can be said that the [government] is *responsible* for the specific conduct of which the plaintiff complains.'" *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 632 (1991) [hereinafter *"Edmonson"*] (alterations in the original). Put differently, deciding whether there has been state action requires an inquiry into whether "there is a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004 (internal citation omitted).

The Third Circuit in *Mark* describes the Supreme Court initially as "somewhat liberally applying" the exclusive government function test that Plaintiff relies upon here. Yet, in more recent years, the Supreme Court "came increasingly to emphasize the 'exclusivity' aspect of the test, and *rarely found that plaintiffs had met that rigorous standard*…. In sum, the exclusive public function test rarely could be satisfied." *Id.* at 1142 (finding fire company was a state actor relying upon case law that provision of fire protection is a governmental function, but nonetheless granting summary judgment in favor of the fire company based upon absence of an

underlying constitutional violation and absence of willful disregard or deliberate indifference) (italics added).

Applying the principles described in *Mark*, Plaintiff is unable to meet the rigorous standard of demonstrating that the diversion or social services the HSAO Defendants provided, including Ms. Terry driving Ms. S. Bernard from jail to her home, are an exclusive government function.  Similar to the first aid squad in *Gorman* and the school for maladjusted youth in *Rendell-Baker*, receipt of public funds and serving the public are not actions that convert a private entity and its employees, like the HSAO Defendants, into state actors.  For this reason, Plaintiffs' Section 1983 claims against the HSAO Defendants should be dismissed.

### B.   Absence of Constitutional Violation

As above-described, to prevail under § 1983, Plaintiff must allege the violation of a right secured by the Constitution, and must show that the alleged deprivation was committed by a person acting under color of state law.  Plaintiff relies upon the Due Process Clause of the Fourteenth Amendment to support his allegation of a constitutional violation.

However, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.  The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195 (1989). *DeShaney* arises from severe injuries a father inflicted upon his four year old son.  The son and his mother brought a civil rights action against the State in the form of the county department of social services and several of its social workers.  In affirming summary judgment in favor of the defendants, the Supreme Court concluded "that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due

Process Clause. *Id.* at 197. See also *Mark*, 51 F.3d at 1149-53 (finding plaintiff failed to establish deprivation of a constitutional right).

In the case at issue, no constitutional right is implicated because the Due Process Clause does not extend to protect Ms. M. Bernard from her daughter's violence. Similar to the social workers in *DeShaney*, the Due Process Clause did not impose upon the HSAO Defendants an affirmative duty to provide Ms. M. Bernard with protection. Moreover, any alleged failure to protect Ms. M. Bernard does not constitute a violation of the Due Process Clause. Thus, Plaintiff's Section 1983 claims should be dismissed. The HSAO Defendants recognize that Plaintiff looks to circumvent the general rule that the state has no affirmative obligation to protect citizens from the violent acts of private individuals via the state-created danger exception. Yet, as below-discussed, Plaintiff is unable to establish the elements of this theory.

**C.      Inability to State a Viable Claim Under the State-Created Danger Theory**

In concluding that a plaintiff failed to demonstrate that he was deprived of a constitutional right, the Third Circuit in *Mark* articulated the four elements of the state-created danger theory of liability:

> (1)    the harm ultimately caused was foreseeable and fairly direct;
> (2)    the state actor acted in willful disregard for the safety of the plaintiff;
> (3)    there existed some relationship between the state and the plaintiff; and,
> (4)    the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

*Mark*, 51 F.3d at 1152-53. Here, Plaintiff necessarily fails under all elements of this theory.

Concerning the foreseeable and fairly direct harm element or **first element**, while Plaintiff asserts legal conclusions that "discharging" and transporting Ms. S. Bernard to the home where she resided with Ms. M. Bernard prior to her arrest created a foreseeable danger to Ms. M.

Bernard, this contention is not supported by the facts of the Second Amended Complaint. To the contrary, there are no allegations that the activities triggering Ms. S. Bernard's December 2015 arrest involved violent conduct toward her mother or any other person, or that she had exhibited such behavior during the months leading up to her arrest. Additionally, there are no allegations that Ms. S. Bernard displayed violent behavior while in jail or while Ms. Terry drove Ms. S. Bernard from jail to her home. Chronic mental illness and an alleged need for inpatient mental health treatment do not support findings of foreseeability and causation.

Plaintiff's bald assertion that returning Ms. S. Bernard to her home created a foreseeable danger is unsubstantiated. To find liability under the state-created danger theory in this case requires an improper stretching of the concepts of foreseeability and causation. See *Morse v. Lower Merion School District*, 132 F.3d 902, 908-09 (3d Cir. 1997) (affirming order granting defendants' motions to dismiss, and deciding that plaintiff was unable to satisfy several elements of the state-created danger theory).

Likewise, *Morse* supports that Plaintiff is unable to satisfy the **second element** of the state-created danger theory. It is not enough for a plaintiff to show the state increased the danger of harm from a third person, a plaintiff also must establish that the state acted with a required degree of culpability in failing to protect the plaintiff: "'[T]he environment created by the state actors must be dangerous; they must know it to be dangerous; and ... [they] must have been at least deliberately indifferent.' .... In other words, the state's actions must evince a willingness to ignore a foreseeable danger or risk." *Id.* at 910, quoting *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir. 1994), cert. denied, 514 U.S. 1017 (1995). More recently, the Third Circuit relied upon the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) to determine that "in a due process challenge to executive action, the threshold

question is whether the government officer's actions 'shock the contemporary conscience.' ...

However, the Court stated that whether behavior rises to the level of conscience-shocking will

depend upon the facts of each individual case." *Sanford v. Stiles*, 456 F.3d 298, 305-06 (3d Cir.

2006). "The level of culpability required to shock the conscience increases as the time the state

actors have to deliberate increases. In a 'hyperpressurized environment,' an intent to cause harm

is usually required. On the other hand, in cases where deliberation is possible and officials have

the time to make 'unhurried judgments,' deliberate indifference is sufficient." *Id.* at 309.

In *Sanford*, the Third Circuit affirmed summary judgment in favor of a school district and

a counselor based, in part, upon the plaintiff's inability to establish that the counselor' decisions

regarding a student who later committed suicide shocked the conscience. A similar outcome is

warranted here, regardless of the level of culpability required -- deliberate indifference or

otherwise. As above-described, accepting the averments of the Second Amended Complaint as

true, there is no indication that Ms. S. Bernard displayed violent conduct toward her mother or

any other person leading up to her December 2015 arrest and until the time Ms. Terry

transported Ms. S. Bernard on February 17, 2016, nor does Plaintiff allege that Ms. S. Bernard

acted out violently prior to arriving home. Obviously, the HSAO Defendants could not have

notice of non-existent behavior. Consistent with *Morse* and *Sanford*, even with viewing the

Second Amended Complaint allegations as true, Plaintiff has not established the requisite degree

of culpability.

Concerning the **third element** -- foreseeable plaintiff--, the HSAO Defendants assert

Plaintiff is unable to satisfy this element for reasons similar to his failure to establish that the

harm was foreseeable. Again, accepting the allegations of the Second Amended Complaint as

true, the HSAO Defendants were not aware of any violent behavior exhibited by Ms. S. Bernard,

toward Ms. M. Bernard or any other person, during the six months leading up to the incident. Thus, it was not foreseeable that Ms. M. Bernard was vulnerable to a foreseeable injury. See *Marion*, 132 F.3d 912-14.

Finally, with regard to the **fourth element** of the state-created danger theory, the Third Circuit noted in *Bright v. Westmoreland County*, 443 F.3d 276, 282 (3d Cir. 2006), "we have never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised." In *Bright*, the Court affirmed the trial court's dismissal of a civil rights action arising from the death of a minor child, finding, inter alia, no affirmative exercise of state authority that increased the risk of harm. *Id.* at 285.

To satisfy the fourth element, three conditions are necessary: (1) a state actor exercised his or her authority, (2) the state actor took an affirmative action, and (3) this act created a danger to the citizen or rendered the citizen more vulnerable to danger than had the state not acted at all. *Ye v. U.S*, 484 F.3d 634, 639 (3d Cir. 2007), citing *Bright*, 443 F.3d at 281-82. *Ye* involves the Third Circuit's reversal of a denial of summary judgment where the appeals court found that a publicly employed physician's verbal assurances concerning plaintiff's decedent's health condition did not constitute a basis for a Section 1983 claim. In analyzing these conditions, the dispositive factor is whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable. *Morse*, 132 F.3d at 915. Mere failure to warn of a threat is not a sufficient affirmative act. *Walter v. Pike County, Pa.*, 544 F.3d 182, 194-95 (3d Cir. 2008).

In *Kaucher v. County of Bucks*, 455 F.3d 418 (3d Cir. 2006), a corrections officer and his spouse filed a § 1983 action against a county and county employees after they contracted MRSA skin infections allegedly as a result of the conditions at the correctional facility where the officer worked. In affirming summary judgment in favor of defendants, the Third Circuit noted that to

14

succeed under a state-created danger theory, a plaintiff must show a misuse of state authority, rather than a failure to use it. *Id.* at 432, citing *Bright*, 443 F.3d at 282. The Court continued that the fourth element is satisfied only where the state's action was the "but for cause" of the danger faced by a plaintiff. *Id.* The *Kaucher* plaintiffs framed their claims in terms of actions affirmatively creating dangerous conditions and affirmatively misrepresenting dangers; however, the Court noted that at base, both claims were only alleged failures to take action. *Kaucher*, 455 F.3d at 434.

Any alleged failure of the HSAO Defendants to protect Ms. M. Bernard is not sufficient for an affirmative act. "[T]he affirmative duty to protect arises *not from the State's knowledge* of the individual's predicament or from its expressions of intent to help him, *but from the limitation it has imposed* on his freedom to act." *Ye*, 484 F.3d 640, quoting *DeShaney*, 489 U.S. at 200 (italics added). The actions of the HSAO Defendants in no way restricted, restrained or interfered with Ms. M. Bernard's freedom to act on her own behalf. She was able to summon the police, initiate involuntary commitment proceedings or take other action. As above argued, Ms. S. Bernard's actions were not foreseeable to the HSAO Defendants. No actions by the HSAO Defendants are the "but for" cause Ms. M. Bernard's death. For these reasons, Plaintiff cannot establish the fourth element of the state-created danger theory.

### D.   Absence of Causal Link Involving a HSAO Policy or Failure to Train

Additionally, the Second Amended Complaint's Section 1983 claims against HSAO at the Second and Third Causes of Action fail because Plaintiff does not identify a specific HSAO policy or failure to train allegation that may provide a basis for liability. "A municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton,*

*Ohio v. Harris*, 489 U.S. 378, 385 (1989), citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 698 (1978) (emphasis in the original). Municipal liability attaches in instances where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Id.* (citations omitted). A plaintiff must prove that the municipal practice was the proximate cause of the injuries suffered: "A sufficiently close causal link between ... a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." *Id.* at 850-51.

In this case, Plaintiff alleges that HSAO had "a policy and/or practice of not ensuring that individuals with severe mental health issues who are discharged from the custody of the Allegheny County Jail received appropriate mental health care, supervision, medication and monitoring, and are similarly not placed in situations where they could constitute a foreseeable threat to the public." ECF 51, ¶ 43. Additionally, Plaintiff alleges that HSAO failed to implement appropriate policies and procedures regarding the placement of detainees who are discharged from correctional facilities with severe mental health problems that render them a danger to others." ECF 51, ¶ 44. These allegations constitute bald assertions and legal conclusions, which this Court need not credit.

For guidance, HSAO directs this Court to *Kirby v. Visionquest Natl., Ltd.*, 2016 WL 1623439 (E.D.Pa. 2016). The trial court in *Kirby* granted the defendants' motion to dismiss a Section 1983 *Monell* claim because the plaintiff failed to "allege sufficiently a plausible claim

for relief under § 1983 as he has not identified the specific policy or custom which caused [the plaintiff's minor son's] constitutional deprivation." *Id.* at *3. The court further noted that plaintiff failed to allege the necessary factual allegation. *Id.*

Similar to *Kirby*, Plaintiff fails to allege a specific policy, related facts, or how the violation of such policy was the proximate cause of Ms. M. Bernard's death, as is required to support a Section 1983 *Monell* claim. From the Second Amended Complaint, it is unclear what HSAO policy was the alleged moving force of the constitutional violation. Therefore, Plaintiff's Second Cause of Action should be dismissed.

Likewise, his Third Cause of Action, attempting to assert a Section 1983 *Monell* claim based upon a failure to train necessarily fails. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as an actionable city 'policy.'" *City of Canton, Ohio*, 489 U.S. at 389. "Moreover, the identified deficiency in the training program must be closely related to the ultimate injury." *Id.* The Supreme Court concluded "that there are limited circumstances in which an allegation of a "failure to train" can be the basis for liability under § 1983. *Id.* at 387. Here, Plaintiff's allegations do not represent these limited circumstances.

Plaintiff alleges HSAO failed to train on a number of topics, including "circumstances on which detainees can be discharged to the public unsupervised and without mental health treatment . . . ." ECF 51, ¶ 49. Also, Plaintiff asserts that HSAO instituted a training regimen but through deliberate indifference failed to adequately hire, screen, train, and/or supervise employees.

Plaintiff does not aver facts supporting the contention that HSAO's failure to train amounted to deliberate indifference, nor demonstrate that the failure to train actually caused the

17

constitutional injury. Additionally, there is no direct causal connection between the Defendant HSAO's alleged failure to train and the injury.

### E.     Failure to State Grounds for Negligence Claims

Similarly, Plaintiff fails to aver sufficient facts and allegations to support his Fourth Cause of Action, which is a wrongful death and survival action based upon a vicarious liability, negligence and corporate negligence theories. While Plaintiff makes some conclusory allegations at Paragraphs 55 through 57 of the Second Amended Complaint, he does not aver any negligence particulars. "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544 at 555. Plaintiff must show that the allegations of his Second Amended Complaint are plausible. See *Iqbal*, 556 U.S. at 662. Consistent with *Twombly*, Plaintiff has not met his pleading obligation and the Fourth Cause of Action should be dismissed.

To the extent this Court dismisses all claims against the HSAO Defendants over which it has original jurisdiction and decides to grant Plaintiff another opportunity to amend the wrongful death and survival claim, the HSAO Defendants request that the Court decline to exercise supplemental jurisdiction over the claim. See 28 U.S.C. § 1367(c)(3) and *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

### F.     The HSAO Defendants Are Entitled to Qualified Immunity

The HSAO Defendants assert that they are entitled to qualified immunity. Qualified immunity protects governmental officials from personal liability for civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *George v. Rehiel*, 738 F.3d 562, 571-72 (3d Cir. 2013).

Qualified immunity extends to private contractors working for government entities, like the HSAO Defendants. See *Filarsky v. Delia*, 566 U.S. 377 (2012). A determination of whether qualified immunity applies involves a two-prong test: "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct." *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 241 (3d Cir. 2016); *Mullenix v. Luna*, 136 S. Ct. 305, 314 (2015) (citation omitted).

"If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002). As stated above, Plaintiff cannot establish violation of a constitutional right pursuant to Section 1983 or otherwise, which is the first prong of the above test. As such, the qualified immunity analysis is complete, and Ms. Terry and Ms. O'Brien are entitled to qualified immunity. Thus, Plaintiff's Section 1983 claims against them should be dismissed.

## G.   Demand for Punitive Damages Not Warranted

To the extent this Court determines Plaintiff's claims survive the above challenges, his demand for punitive damages directed to Ms. Terry and HSAO should be dismissed. "Punitive damages are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious and to deter others from similar extreme conduct." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-67 (1981). Punitive damages are available in a Section 1983 case when a defendant's conduct is at a minimum, reckless or callous. Additionally, they may be warranted if the conduct is intentional or motivated by evil motive. *Smith v. Wade*, 461 U.S. 30, 47-48 (1983). "However, this standard applies only to defendants sued in their individual capacities; neither municipalities nor defendants sued in their official capacities can be liable for punitive damages." *City of Newport*,

452 U.S. at 271.   Here, Plaintiff sued Ms. Terry and HSAO, in part, in their official capacities. See ECF 51, Introduction, "contractors filling the role of public officials."

Further, with regard to any claims against Ms. Terry and HSAO in an individual capacity, the allegations of the Second Amended Complaint do not satisfy the Pennsylvania law standard for the imposition of punitive damages.   See *Hutchison v. Luddy*, 870 A.2d 766 (Pa. 2005).

## V.   CONCLUSION

WHEREFORE, based on the foregoing, Defendants Rachelle Terry, Erin O'Brien and The Human Services Administration Organization, Incorporated, respectfully request this Honorable Court to dismiss Plaintiff's Second Amended Complaint with prejudice.

Respectfully submitted,

WALSH, BARNES, COLLIS & ZUMPELLA, P.C.

By____/s/ Susan A. Kostkas_____
         Pamela V. Collis, Esquire
         PA I.D. #73657
         Susan A. Kostkas, Esquire
         PA I.D. #79231
         707 Grant Street
         Gulf Tower, Suite 1400
         Pittsburgh, PA 15219
         (412) 258-2255
         (412) 263-5632 – fax
         skostkas@walshlegal.net
         *Counsel for Defendants, Rachelle Terry,*
         *Erin O'Brien, and The Human Services*
         *Administrative Organization, Incorporated*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)** has been served by the Electronic Case Filing System for the United District Court for the Western District of Pennsylvania this 31st day of October, 2018 to the following counsel of record:

D. Aaron Rihn, Esquire
Robert Peirce & Associates, P.C.
707 Grant Street, Suite 2500
Pittsburgh, PA 15219
and
Elmer R. Keach, III, Esquire
Law Offices of Elmer R. Keach, III
1 Pine West Plaza, Suite 109
Albany, NY 12205
*Counsel for Plaintiff, Raymond Bernard both individually and*
*on behalf of the Estate of Madeline Bernard*

WALSH, BARNES, COLLIS & ZUMPELLA, P.C.


By____/s/ Susan A. Kostkas_____
Pamela V. Collis, Esquire
Susan A. Kostkas, Esquire
*Counsel for Defendants, Rachelle Terry,*
*Erin O'Brien, and The Human Services*
*Administrative Organization, Incorporated*